**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| RACHEL ALDRIDGE, as Surviving Mother of Brooklynn Aldridge, Deceased, and as Temporary Administrator of the Estate of Brooklynn Renee Aldridge, <br><br> Plaintiff, <br><br> -vs- <br><br> BEVERLY BEAUMIER, RAVEN GOLDEN, and CLINTON WAYNE HARPER, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )    CIVIL ACTION NO: 5:21-cv-15 |

---

### PLAINTIFF'S NOTICE OF FILING

COMES NOW Plaintiff Rachel Aldridge and, hereby files Composite Exhibit A as set forth below:

A-1    Summary of 30(b)(6) Deposition of Georgia Department of Families and Children, Safety Services Director LaResa Price taken on July 8, 2021;

A-2    Summary of Deposition of Monica Brown taken on August 19, 2021;

A-3    Summary of Deposition of Monica Inman taken on September 21, 2021;

A-4    Summary of Deposition of Velvet Harris taken on September 21, 2021;

A-5    Summary of Deposition of Andrea Durham Dixon taken on September 27, 2021;

A-6    Summary of Deposition of Ashlea Branch taken on September 30, 2021.

Respectfully submitted this 13th  day of October, 2021.

                **/s/ Brent J. Savage**
                Brent J. Savage
                Georgia Bar No. 627450
                *Attorney for Plaintiff*

SAVAGE, TURNER, PINCKNEY & SAVAGE
P.O. Box 10600
Savannah, Georgia 31412
(912) 231-1140
bsavage@savagelawfirm.net
lhatcher@savagelawfirm.net

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the above and foregoing **Plaintiff's Notice of Filing** by using the CM/ECF system which will send an electronic copy to the following counsel of record:

<table>
<tr>
<td align="center">
Paul Henefeld<br>
Noah Green<br>
Appelbaum Henefeld & Green, P.C.<br>
9 Lenox Pointe, N.E., Suite B<br>
Atlanta, GA 30324<br>
pah@aps-law.com<br>
ng@aps-law.com
</td>
<td align="center">
Leslie Kennerly<br>
J. Holder Smith<br>
Young, Thagard, Hoffman, LLP<br>
P.O. Box 3007<br>
Valdosta, GA 31604<br>
lesliekennerly@youngthagard.com<br>
jaysmith@youngthagard.com
</td>
</tr>
</table>

Laura Lones
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334-1300
llones@law.ga.gov

This 13th day of Octoberr, 2021.

**/s/ Brent J. Savage**
Brent J. Savage
Georgia Bar No. 627450
*Attorney for Plaintiff*

SAVAGE, TURNER, PINCKNEY & SAVAGE
P.O. Box 10600
Savannah, Georgia 31412
(912) 231-1140
lhatcher@savagelawfirm.net
bsavage@savagelawfirm.net



# SWORN TESTIMONY OF LARESA PRICE
## ON BEHALF OF GEORGIA DEPARTMENT OF FAMILY AND AND CHILDREN'S SERVICES
### SAFETY SERVICES DIRECTOR, DFCS

## July 8, 2021

## FAILINGS/POLICY VIOLATIONS OF DFCS EMPLOYEES

- **In order for Safety Plan to be effective - should have been signed by Rachel Aldridge** (P16, L10)

- **Beaumier did not meet with Rachel Aldridge before signing off on the Safety Plan that she discussed it with her** (P19, L14-22)

- **Rachel Aldridge did not agree to the Safety Plan attached to Ron Lott's custody petition** (P23, L3-4)

- **DFCS policy required that action be taken in response to the January 24th calls from Rachel Aldridge and Jimmy Taylor related to Coleman's meth use** (P28, L22-25; P33, L2-4)

- **DFCS did not take immediate action after receiving those calls on January 24th** (P32, L22-24)

- **It is DFCS policy to investigate secondary caregivers (Coleman) including past DFCS problems and it was not done here** (P33, L24-25; P41, L1-9)

**A-1**

▸ **Criminal records check was <mark>never done</mark> on Amanda Coleman and it <span style="color:red">should have been</span>** (P55, L13-24)

▸ **The criminal records check was a <mark>mandatory duty DFCS failed to take</mark>** (P56, L5-12)

▸ **DFCS should have looked at Coleman's history with DFCS <span style="color:red">as part of their evaluation and assessment</span>** (P81, L17-19)

▸ **Giving care of a child to a secondary caregiver where this is a pending felony meth charge and prior DFCS history <mark>would not comply with DFCS policy</mark>** (P20-25)

▸ **DFCS Case Managers should know DFCS policies and have access to them** (P86, L18-19)

▸ **<span style="color:red">A drug screen should have been conducted</span> on Coleman due to a safety issue, it was not done** (P86, L20-25)

▸ **There should have been oversight with the supervisor (<mark>Golden</mark>) through the life of the case to ensure things were implemented and done** (P87, L19-24)

▸ **In the case with Ms. Aldridge, the <span style="color:red">buck stopped</span> with Case Manager Beaumier and Supervisor Golden** (P89, L15-18)

▸ **If Amanda Coleman had been properly assessed, she never would have been deemed an appropriate secondary caregiver** (P105, L13-19)

▸ **The Safety Resource Consent Form should have been given to Rachel Aldridge and it was not** (P111, L14-18; P112, L2-3)

▸ **DFCS did not do a criminal history check on Lott and Coleman, it should have been done and was the responsibility of Golden and Beaumier** (P116, L4-18)

▸ **DFCS violated Policy 19.12 because Rachel Aldridge not involved with the development of the Safety Plan** (P119, L12-16)

▸ **The Child Safety Brochure was to be given to Rachel Aldridge and it was not** (P123 L3-8)

▸ **The Social Services Supervisor (Raven Golden in this case) is to participate in development of safety planning strategy, provide ongoing consultation around safety planning management** (P127-128)

▸ **There are NO RECORDS showing Raven Golden did this - violation of policy** (P128, L13-19)

▸ **All parties should be involved in development of Safety Plan, all parties should sign it and shouldn't be distributed until all parties sign** (P130, L13-23)

# SWORN TESTIMONY OF MONICA BROWN
## FORMER CASE MANAGER, DFCS
## August 19, 2021

### FAILINGS/POLICY VIOLATIONS OF DFCS EMPLOYEES

▸ **Agrees there were times the Pierce County DFCS office was understaffed - high turnover of employees (P10, L7-13)**

▸ **Even though Rachel Aldridge was temporarily in jail, she still had custody of Brooklynn (P12, 25)**

▸ **In cases where a parent is incarcerated, you should discuss the Safety Plan with them via phone and then go to the jail to meet in person and have them sign (P13, L9-16)**

▸ **Would also have jail staff make a copy of the Safety Plan so the parent would have a copy once they were released (P14, 10-16)**

▸ **If the agreement was that Brooklynn only stay with Lott until Ms. Aldridge was released from jail, that should have been included in the Safety Plan (P15, L12-21)**

▸ **If it wasn't agreed to by Rachel Aldridge that Ron Lott should contact law enforcement of Rachel tries to pick Brooklynn up, it should not have been stated that way on the Safety Plan (P16, L8-16)**

**A-2**

▸ **If Beverly Beaumier had not discussed the Safety Plan with Rachel Aldridge on 1/15/18, that should not be the date listed (P16, L23-25)**

▸ **Agrees DFCS should have taken immediate action after receiving communications from Rachel Aldridge and Jimmy Taylor on 1/24/18 re: Coleman's meth use (P19, L1-15)**

▸ **As a case manager, her immediate action would have been to contact her supervisor (P19, L19-21)**

▸ **Drug testing should have been done if there are allegations of meth use (P20, L13)**

▸ **It would be DFCS protocol to investigate the secondary caregiver (P21, L7)**

▸ **Amanda Coleman's criminal history should have been checked as the secondary caregiver (P22, L6)**

▸ **Assuming Amanda Coleman's criminal history, DFCS policy would not have allowed Brooklynn to be placed in a home with her (P23, L1-6)**

▸ **DFCS should have drug tested Amanda Coleman (P23, L15-17)**

▸ **If a supervisor is aware of statements made to DFCS about meth use, supervisor should make sure drug testing is done (P24, L12-20)**

▸

▸ **Agrees a <mark>criminal records check should have been done</mark> on Amanda Coleman (P25, L5-10)**

▸ **Agrees the criminal records check was a mandatory duty that DFCS had and failed to do (P25, L11-15)**

▸ **DFCS should have looked at Coleman's history with DFCS as part of their assessment before allowed her to be a secondary caregiver (P25, L16-21)**

▸ **Giving care to a secondary caregiver with a pending felony meth charge and prior DFCS history <mark>would not comply with DFCS policy</mark> (P26, L3-8)**

▸ **Once involved, Pierce County DFCS had obligations regardless of the child being located in Coffee County (P26, L20-23)**

▸ **When the bruise found on Brooklynn was reported, a drug screen should have been done (P27, L1-6)**

▸ **There should have been oversight with supervisor Raven Golden through the life of the case (P27, L13-23)**

▸ **The <mark>buck stopped</mark> with Beverly Beaumier and Raven Golden (P27, L12-17)**

▸ **If Amanda Coleman had been properly assessed, she <mark>never would have been deemed an appropriate secondary caregiver</mark>** (P28, L1-4)

▸ **The Safety Resource Consent Form should have been given to Rachel Aldridge** (P31, L14-22)

▸ **DFCS agents/case managers should not have told Rachel Aldridge she had to go to rehab in order to get your child back** (P32, L9-14)

▸ **The criminal history check on Lott/Coleman was the the <span style="color:red">responsibility of Golden and Beaumier</span>** (P32, L19-25)

▸ **Raven Golden should have participated in the development of the safety planning strategy and provided ongoing consultation** (P34, L8-16)

▸ **There are no records Raven Golden did this and agrees this is a <mark>violation of DFCS policy</mark>** (P34, L17-21)

# SWORN TESTIMONY OF MONICA INMAN
## SUPERVISOR, DFCS
## FAMILY PRESERVATION ERVICES
## SEPTEMBER 21, 2021

### FAILINGS/POLICY VIOLATIONS OF DFCS EMPLOYEES

▸ **A child safety plan should not be handed out without ever having talked to the custodial parent (P13, L4-7)**

▸ **Should not mark on a child safety plan that it has been agreed to by the caregiver when you've never met the caregiver (P15, L1-4)**

▸ **Never seen a situation where a document states it has been discussed with someone that it actually has never been discussed with (P16, L8-16)**

▸ **A safety resource guide is to be given to the caregiver (P17, L12-14)**

▸ **The safety resource brochure should have been given to the caregiver (P18, L3)**

▸ **Agrees that it is DFCS policy to investigate the secondary caregiver, including past DFCS problems (P20, L24-25, P21, L1-3)**

▸ **Would not have approved Amanda Coleman to be allowed as the secondary caregiver in this situation (P21, L9-17)**

**A-3**

▸ **Amanda Coleman's criminal history should have been checked <mark>AND WAS REQUIRED TO BE CHECKED</mark> prior to approving her as secondary caregiver** (P22, L1-6)

▸ **Amanda Coleman should not have been allowed as secondary caregiver, given her pending drug charges** (P22, L15-17)

▸ **DFCS should not have allowed Ron Coleman to be the safety provider, given his pending criminal charges** (P23, L7-8)

▸ **If Amanda Coleman was not the secondary caregiver, she wouldn't have had access to Brooklynn** (P23, L9-15)

▸ **The Safety Resource Consent Form <mark>should have been signed prior</mark> to a safety resource plan being put in effect** (P23, L17-21)

▸ **The purpose of the Safety Resource Consent Form is to advise the custodial parent of their rights, i.e. you are still the custodial parent** (P24, L6-10)

▸ **<mark>If Amanda Coleman had been properly assessed, she never would have been deemed an appropriate secondary caregiver</mark>** (P24, L13-21)

▸ **If the Safety Resource Consent Form was given to Rachel Aldridge, that should be noted in the SHINES system** (P24, L22-25, P25, L1)

▸ **If there had been a meeting on January 15, 2018 to go over the child safety plan with Rachel, that should be noted in the SHINES system** (P25, L2-6)

▸ **A criminal history check should have been done on Ron Lott and Amanda Coleman** (P25, L7-11)

▸ **The supervisors should have participated in the safety planning strategy and managing the safety plan** (P26, L18-22)

▸ **If Ms. Golden participated in safety planning strategy and ongoing consultation, that should be noted in the SHINES system** (P27, L3)

▸ **If Ms. Golden did not participate in the safety planning strategy and ongoing consultation, that would be a violation of mandatory DFCS policy** (P27, L4-7)

▸ **If Rachel Aldridge complained Amanda Coleman had drug problems, Coleman should have been drug tested and IT IS REQUIRED BY DFCS** (P28, L4-10)

▸ **Wherever the primary caretaker lives is the county that has precedence over that case** (P29, L21-25)

▸ **The primary caretaker can choose** **where they want their children to go; the choice has to be assessed; if cleared, that is where the children go (P30, L8-12)**

▸ **If the child's mother wanted the child to go with her other two children to her sister, that should have been the first option to look into (P30, L13-20)**

▸ **A secondary caregiver's criminal history or drug use history plays a part in whether or not a primary caregiver gets approval (P32, L1-4)**

▸ **When a parent signs a safety plan, they still have legal custody of their child (P34, L2-3)**

# SWORN TESTIMONY OF VELVET HARRIS
## SPECIAL INVESTIGATOR, DFCS
## SEPTEMBER 21, 2021

### FAILINGS/POLICY VIOLATIONS OF DFCS EMPLOYEES

▸ **DFCS has a duty to investigate all household members of a primary caregiver (P8, L20-21)**

▸ **Has never seen a case where the agent responsible for welfare of a child writes to the othe and says DFCS killed your daugther (P12, L2-5)**

▸ **Understaood that Amanda Coleman had pending felony meth charges against her at the time she became a secondary caregiver (P13, L8-12)**

▸ **DFCS employees should not hand out documents that are false (P13, L18-20)**

▸ **If a meeting with Rachel Aldridge had taken place on January 15, 2018, protocol required this information be placed in SHINES (P14, L12-16)**

▸ **In order for a safety plan to be effective, it should be signed by Rachel Aldridge (P15, L13-16)**

▸ **Does not know why an unsigned safety plan was handed out as "complete" or why it was used to keep Rachel away from her child (P15, L19-25)**

**A-4**

‣ **Does not know how you could ever agree to a plan that you never saw and was never discussed with you** (P16, L8-11)

‣ <span style="color:red">**Agrees there would not have been a murder if DFCS properly assessed Amanda Coleman**</span> (P19, L1-4)

‣ <span style="color:red">**If an agency causes the death of a child, they should be forthcoming**</span> (P19, L11-14)

‣ **It is not appropriate to turn in child safety plans that contain false information**(P20, L13-16)

‣ **The Safety Resource Consent Form should have been filled out if Brooklynn was placed with a safety resource** (P21, L3-5)

‣ **The Safety Resource Consent Form is so the custodial parent knows their rights** (P21, L16-20)

‣ ==**A criminal history check should have been done on Lott and Coleman**== (P22, L17-24)

‣ **It is the statutory law that you cannot give custody to a non-legitimated father** (P24, L18-21)

‣ **Coleman admitted that she was using meth the entire time she had charge of Brooklynn Aldridge** (P25, L14-18)

▸ **If Raven Golden had been involved in the safety plan and ongoing consultation, there should have been a record in SHINES** (P26, L14-24)

▸ **All parties involved in the development of the safety plan should sign it and it shouldn't be distributed until all parties have signed it (P27, L11-17)**

▸ **Amanda Coleman should have been drug tested if Rachel had told DFCS her worries over Coleman's drug use (P30, L11-14)**

▸ **Does not blame Rachel Aldridge for having trust concerns with DFCS (P34, L11-15)**

▸ **Does not know of anyone who has followed up with the family's concerns about DFCS' failures that led to Brooklynn's death (P35, L12-14)**

▸ **Finding information on substance abuse history and CPS reports is part of DFCS assessment when they receive a case to review and they have access to that information (P38, L2-13)**

▸ **By policy, the case manager is supposed to look at the CPS history of potential caregivers (P38, L25)**

▸ **Has never known the agency to give a child to two people with pending felony meth charges against them (P39, L9-15)**

▸ **You are supposed to check criminal backgrounds of potential caregivers (P39, L16-18)**

▸ **Agrees that if Amanda Coleman had been properly assessed, she never would have been deemed to be an appropriate secondary caregiver (P39, L19-24)**

▸ **Does not feel like Amanda Coleman was honest with her on March 23rd when she and Lott denied any knowledge of substance abuse, fussing or fighting at home (P42, L4-10)**

▸ **Brooklynn's death was preventable if DFCS had done their job (P45, L19-23)**

# SWORN TESTIMONY OF ANDREA DURHAM DIXON
## FORMER CASE MANAGER/INVESTIGATOR DFCS
# SEPTEMBER 27, 2021

## FAILINGS/POLICY VIOLATIONS OF DFCS EMPLOYEES

▸ **Does not recall receiving an email from Raven Johnson dated February 21, 2018 requesting that she contact Rachel Aldridge** (P7, L14-18)

▸ **Never spoke with Rachel Aldridge** (P8, L16-20)

▸ **Child Safety Plans are put in place to prevent further action from happening to the child** (P9, L8-10)

▸ **Does not know how many times Rachel Aldridge told members of DFCS that Coleman (secondary caregiver) was using meth** (P11, L5-8)

▸ **All secondary caregivers are supposed to be drug screened** (P11, L9-13)

▸ **If there were at least nine complaints to DFCS prior to Brooklynn's murder that the secondary caregiver was using meth, it would be even more important to do the drug screen** (P11, L14-19)

▸ **A criminal background check should have been done on Amanda Coleman and it was never done** (P13, L4-7)

**A-5**

▸ **Definitely agrees that a criminal records check was a mandatory duty DFCS failed to undertake in this case** (P13, L8-11)

▸ **It is DFCS policy to do a background check initially, before the child is in the home** (P13, L12-15)

▸ **A person with pending criminal felony charges and prior DFCS finding of mistreatment of children should not be given the job of secondary caregiver of a child under a child safety plan** (P14, L1-7)

▸ **DFCS would be expected to have a meeting about the murder of Brooklynn Aldridge if, as conceded, she never should have been placed in that home environment** (P15, L14-18)

▸ **If Amanda Coleman had been properly assessed, she never would have been deemed to be an appropriate caregiver** (P16, L1-5)

▸ **The Safety Resource Consent Form are to be provided to both the caregiver and the safety resource before they sign the Child Safety Plan so they know their rights** (P17, L11-15)

▸ **It is DFCS policy that caregivers and safety resources be provided the Safety Resource Consent form before they sign the Child Safety Plan** (P17, L16-19)

▸ **It is DFCS policy that the caregiver, in this case Rachel Aldridge, be advised she has custody of her child and <span style="color:red">may end the agreement at any time</span> (P17, L20-25)**

▸ **One of the purposes of the Safety Resource Consent form is, that before a Child Safety Plan is signed, the <span style="color:blue">caregiver is advised that her child remains in her legal custody and control</span> (P18, L1-6)**

▸ **The Child Safety Plan should not be handed out until the caregiver has had it discussed with them, the caregiver agrees to it, a copy is given to the caregiver and the caregiver knows their rights(P19, L1-6)**

▸ **The Safety Resource Brochure should be discussed with the caregiver prior to an agreement to a Child Safety Plan (P19, L8-12)**

▸ **<mark>It is a duty and requirement of DFCS case managers</mark> to discuss all of these documents with caregivers (P19, L13-15)**

▸ **If she had received the email requesting she call Rachel Aldridge, <span style="color:blue">she would have told Ashlea Branch because it was her case</span> (P21, L8-13)**

▸ **<mark>Agrees that DFCS messed up and failed to follow a lot of mandatory duties</mark> in investigating the background on the secondary caregiver and placement of Brooklynn Aldridge (P22, L16-20)**

# SWORN TESTIMONY OF ASHLEA BRANCH
## FORMER CASE MANAGER AT DFCS
## SEPTEMBER 30, 2021

- **Started with DFCS in Bacon County in 2012 and moved to Coffee County in 2015 - left in October 2018 (P5, L23-25; P6, L7-8)**

- **Handled the Coffee County case from February 11th for a brief period before Brooklynn's death until it was handed over to Andrea Dixon (P13, L21-25; P14, L1-3)**

- **Went out to Lott and Coleman's home on February 12th following the allegation of a bruise on Brooklynn's leg (P14, L17-25)**

- **Was not aware there was no criminal background check done on Amanda Coleman (P15, L10-12)**

- **In a case I would have worked and the child went somewhere else, there would have been some screenings done, a home visit, all of those things in the home the child was going to (P19, L21-25)**

- **In a case I would have worked on, a criminal background check would have been done on the secondary caregiver (P20, L1-3)**

- **In a case I would have worked on, there would have been SHINES screenings to see whether she (Coleman) had any history of her own within** A-6

**DFCS** (P20, L19-20)

▸ **The gist of the safety plan put in place by Coffee County was that Ron Lott would take the child to Dr. Patel to be assessed. Does not know what was done on Pierce County's end of things** (P23, L13-21)

▸ **Does not know of a case where a secondary caregiver with two outstanding felony drug charges against them was approved by DFCS** (P24, L4-5)

▸ **A legal parent would have needed to sign off on a child safety plan** (P26, L22-24)

▸ **A safety resource is not a change of custody** (P28, L21-22)

▸ **In practice, would never lead a parent to believe the child was no longer in there custody - a safety resource is meant to be temporary** (P28, L24-25, P29, L1-2)

▸ **Any time a safety resource was done, we also gave the safety resource and the parent a copy of the Safety Resource Brochure** (P32, L16-21)

▸ **Does not recall whether Ron Lott was the legal father at the time she went to his home in February of 2018** (P37, L10-13)

▸ **Her dealings with this case ended by February 13th, 2018 (P38, L15-16)**

▸ **The supervisor would have assigned the case to an investigative case manager, which ended up being Andrea Dixon (P38, L19-21)**

▸ **If she was the case manager and Rachel Aldridge is emailing with concerns about meth use by Amanda Coleman, she would have followed any next steps and staffings from the supervisor (P40, L3-4)**

▸ **In order to use the Child Safety Plan, it should be signed by the caregiver (P41, L13-18)**

▸ **A caregiver should sign the child safety plan before going on to any further steps and it should not contain things that are untrue (P42, L7-12)**

▸ **Does not recall whether any background checks on the secondary caregiver were done between February 11th and 13th, 2018 in Coffee County (P45, L17-18)**

▸ **Does not recall checking to see if any drug testing had been done on the primary or secondary caregiver between February 11th and 13th, 2018 (P45, L22-23)**

‣ **Amanda Coleman admitted to marijuana use and denied methamphetamine use when Ms. Branch visited the home during this time period (P48, L1-24)**

‣ **It is possible for someone to act aggressive when they're on meth (P50, L3-4)**

‣ **I would expect in any case in Child Protective Services for there to be contact and then a supervisor input on next steps and follow- up (L50, L18-20)**

‣ **Does not see a staffing in the DFCS records she was shown (P55, L25)**

‣ **Does not see in the records the safety plan she wrote (P60, L9-12)**

‣ **Went out to Lott home with Andrea Dixon after Brooklynn died because it was an open investigation; came in as a call for Coffee County (P64, L16-23)**

‣ **Was told to go out because they had seen her face before (P65, L12-20)**

‣ **Remember Amanda Coleman said she had no idea what happened except that Brooklynn had been sick - mentioned she threw up a hot dog (P66, L5-12)**

▸ **If reports came in to Coffee County, that would have to be handled by Coffee County DFCS (P70, L16-17)**

▸ **Telling people who haven't tested positive for meth that the only way to get their child back is to go rehab is not a DFCS policy she is familiar with (P72, L23-25; P73, L1-2)**

▸ **If you have suspicion someone is on meth, typically by policy a drug test would be ordered by a supervisor as a next step for a case manager (P73, 22-25)**