UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RACHEL ALDRIDGE, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No: |
| | ) 5:21-cv-00015-LGW-BWC |
| BEVERLY BEAUMIER, *et. al.*, | ) |
|     Defendants. | ) |

**DEFENDANT GOLDEN'S SUPPLEMENTAL BRIEF CONCERNING HER PENDING DISPOSITIVE MOTION**

Defendant Raven Johnson Golden submits this supplemental brief concerning her pending motion to dismiss (Doc. 39) which the Court has converted into a motion for summary judgment (Doc. 65). She mostly relies on her previous submissions but also shows the Court as follows:

**The claims and allegations against Defendant Golden**

This case is now on the Fifth Amended Complaint which, among other things, added Golden as a Defendant in this matter. (Doc. 24). Although this complaint incorporates all of the prior complaints (*id.*, ¶ 1), there are no allegations concerning Golden in those filings (Doc. 1-1 at 1-7; 93-100; Doc. 1-3 at 71-73; Doc. 1-4 at 2-5; Doc. 1-5 at 1-7).

According to the Fifth Amended Complaint[1], Golden worked for DFCS and was the supervisor of Defendant Beverly Beamier, who was Plaintiff's caseworker. (Doc. 24, ¶¶ 8-10). Golden also did some work on Plaintiff's "case," when Beaumier

---

[1] Defendant Golden does not concede that Plaintiff's allegations are accurate.

was on medical leave. (*Id.*, ¶ 11). Plaintiff alleges that Golden was aware of a report that Brooklyn had sustained a bruise and that Amanda Coleman, who was living in the household with Brooklyn and her biological father, Ronald Lott, was using methamphetamine. (*Id.*, ¶ 13). Plaintiff also asserts that Golden failed to properly look into the backgrounds of Lott and Coleman[2] in violation of DFCS policy. (*Id.*, ¶ 12).

Brooklyn died on March 6, 2018. (*Id.*, ¶ 2). Coleman was convicted of malice murder. (Doc. 38-3; Doc. 38-4).

Plaintiff alleges that Golden violated Brooklyn's Fourteenth Amendment substantive due process rights. (*Id.*, ¶ 15). She sues Golden for her "direct participation" and as Beaumier's supervisor. (*Id.*, ¶ 16).

### The facts for purposes of this motion[3]

The uncontroverted evidence, Plaintiff's version of the facts,[4] and the controverted evidence viewed in the light most favorable to Plaintiff show that:

---

[2] Coleman had a substantiated claim of child maltreatment in her past and both Coleman and Lott had been charged with drug crimes. (Doc. 24, ¶ 12).

[3] Defendant Golden does not necessarily concede that all of these facts accurately describe what occurred, but she submits that these are the operative facts for purposes of summary judgment. "[T]he 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case…." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[4] *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*) ("when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*. Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided") (emphasis in original).

1. During the times relevant hereto, Brooklyn Aldridge was never in the custody of DFCS. (Doc. 63-1).[5]

2. On January 14, 2018, Plaintiff Rachel Aldridge was arrested and jailed. (Doc. 1-1 at 2-3, ¶¶ 6-7).

3. At the time of Plaintiff's arrest, her daughter Brooklyn was at the home of Ron Lott, Brooklyn's biological father. (Doc. 1-1 at 9).

4. Brooklyn was with Lott because Plaintiff had taken her there herself, not because DFCS or anyone affiliated with DFCS had placed here there. (Doc. 1-2[6]).

5. Plaintiff agreed that Brooklyn would stay with Lott and signed a safety plan to that effect. (Doc. 1-2 at 31).

6. Lott lived in Coffee County. (*See, e.g.*, Doc. 77-3 at 97).

7. Brooklyn, thus, lived in Coffee County with him. (*Id.*).

8. Lott's girlfriend, Amanda Coleman, also lived in his home in Coffee County. (Doc. 1-1 at 5, ¶ 16).

9. Golden was a supervisor in DFCS Pierce County office and did not supervise cases in Coffee County. (Golden dep. at 7, 33, 46).

---

[5] Plaintiff has argued that the cited order is void, and thus, that she retained legal custody. (Doc. 63; *see especially* at 3 ("only Rachel was entitled to custody of Brooklyn")). Even if so, this fact is still correct. Moreover, a person cannot simply ignore a court order that she believes is erroneous. *Edwards v. Edwards*, 254 Ga.App. 849, 854 (2002).

[6] This transcript is attached to Plaintiff's affidavit. (*See* Doc. 1-2 at 1-4, ¶ 14).

10. Golden expected that DFCS personnel in the Coffee County would perform any needed background checks on the persons living in the home with Brooklyn. (Golden dep. at 55).

11. Golden received reports that Coleman was using drugs. (Golden dep. at 32).

12. Golden notified the Coffee County DFCS office of these reports. (Golden dep. 13, 32-33, 36, 47).

13. DFCS personnel in Coffee County looked into the reports of drug use. (Doc. 77-2 at 42).

14. Golden received a report that Brooklyn had a bruise. (Golden dep. at 33).

15. Golden notified the Coffee County DFCS office of this report. (Doc. 77-3 at 96-100).

16. DFCS personnel in Coffee County looked into the report of the bruise, including asking that Brooklyn be seen by a physician. (Doc. 77 at 60, 62; Doc. 77-2 at 42-43).

17. The physician reported that the bruise was a normal childhood bruise. (Doc. 77-2 at 43).

18. Brooklyn was later murdered by Coleman. (Doc. 38-3; Doc. 38-4).

### Application of the law to the facts

**A.  Plaintiff cannot prove that Defendant Golden directly participated in any constitutional violation**.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 194 (1989). As a general

rule, a State's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. This is because the purpose of clause is to "protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196 (the clause serves as "a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"). Consequently, there is generally "no affirmative right to governmental aid." *Id.* at 197.

Although there are "limited circumstances" in which the Constitution *does* impose upon the State "the affirmative duties of care and protection," these duties apply only to involuntarily committed mental patients (*Youngberg v. Romeo*, 457 U.S. 307 (1982)), prisoners (*Estelle v. Gamble*, 249 U.S. 97 (1976)), and involuntarily placed foster children who are in state custody (*Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987); *Doe v. Braddy*, 673 F.3d 1313 (11th Cir. 2012)). Those cases stand for the proposition that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon [the State] a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. It is well-settled that "only custodial relationships automatically give rise to a governmental duty . . . to protect persons from harm by third parties." *Braddy*, 673 F.3d at 1318; *see also Vaughn v. City of Athens*, 176 Fed. Appx. 974, 977 (11th Cir. 2006).

Consequently, Defendant Golden can be held liable under the Due Process Clause only if her acts or omissions were "arbitrary or conscience shocking, in the

constitutional sense." *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). "[O]nly the most egregious conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Moreover, the determination of whether a defendant's conduct was egregious cannot be made "in the glow of hindsight." *Waddell v. Hemerson*, 329 F. 3d 1300, 1305 (11th Cir. 2003). Rather, "decisions made by a government actor must be egregious—that is, shock the conscience—at the time the government actor made the decision." *Id.*

"[T]he measure of what is conscience-shocking is no calibrated yard stick." *Waddell v. Hemerson*, 329 F. 3d 1300, 1305 (11th Cir. 2003) (*citing Lewis*, 118 S. Ct. at 1717). "We know for certain, however, that a showing of negligence is insufficient." *Id.* In a non-custodial setting, "a substantive due process violation would, *at the very least*, require a showing of deliberate indifference to an extremely great risk of serious injury." *Vaughn v. City of Athens*, 176 Fed. Appx. 974, 977 (11th Cir. 2006) (emphasis in original); *see also Waddell*, 329 F.3d at 1305 ("[a]cts intended to injure in some way unjustifiable by any government interest are most likely to rise to the conscience-shocking level"). As noted by the Eleventh Circuit,

> We stress the phrase "at the very least." We do not rule out today that the correct legal threshold for substantive due process liability in a case like this one is actually far higher. For example, the standard could be that the government official acted with "deliberate indifference to a substantial certainty of serious injury" or maybe that the government official acted "maliciously and sadistically for the very purpose of creating a serious injury" or perhaps some different standard. We feel comfortable today that the standard we use today is the low point --

6

> may well be too low a point -- for a possible standard in a case like this one ….

*Waddell*, 329 F.3d at 1306 n.5. This standard, whatever that not yet fully defined standard is, "is to be narrowly interpreted and applied, such that even intentional wrongs seldom violate the Due Process Clause." *Braddy*, 673 F.3d at 1318. Moreover, a single allegedly mishandled situation "is not 'the most egregious official conduct' that shocks the conscience and violates substantive due process." *Walker v. Dixon*, 840 Fed. Appx. 397, 403 (11th Cir. 2020). In substantive due process cases that—like this one—are premised on personal, physical injuries, courts "are always guided by the Supreme Court's statement that 'The Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States." *Braddy*, 673 F.3d at 1320 n.7 (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)).

Not long ago, the Eleventh Circuit reminded parties and the courts of the "stringency of the deliberate indifferent standard." *Hoffer v. Sec., Fla. Dep. of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).[7] In that case, the Court reiterated that "deliberate indifference is *not* a constitutionalized version of common-law negligence." *Id.* (emphasis in original). "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard … is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective reckless as used in criminal law.'" *Id.*

---

[7] Though *Hoffer* is an Eighth Amendment decision, there is no indication in the law that deliberate indifference is to be applied differently in the Fourteenth Amendment context.

7

(*quoting*, respectively, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994)).

How this analysis is to play out is well demonstrated by the *Braddy* decision. That case involved a minor child who social workers were involved in placing in an adoptive home. 673 F.3d at 1315. There were allegations that the child had engaged in sexual misconduct and physical abuse of children. *Id.* At least one social worker was aware that the child claimed to have been sexually abused himself. *Id.* at 1315-16. The social workers ignored a psychologist's recommendation that the child not be placed in a home with other children who "might be vulnerable to his sexual acts" and seem not to have warned the adopting parents about many of these concerns. *Id.* at 1316-17. The child, age 16, sexually abused the adoptive parent's five-year-old grandson. *Id.* at 1317. The Eleventh Circuit concluded that the social workers were entitled to qualified immunity, finding that the law was not clearly established by either pre-existing caselaw or the obvious clarity doctrine. *Id.* at 1318-20.

This case is similar to *Braddy* in some important ways. While *Braddy* involved sexual abuse and this case is about a death, both situations involved a small child who was subjected to violence. Notably, neither child was in state custody. (Fact 1). And both dealt with state employees who had some knowledge of an imperfect person in the victim's vicinity. But this is where the two cases begin to differ and they differ in Golden's favor.

The *Braddy* defendants were aware of allegations of sexual and physical abuse and of a professional report warning that the child not be placed with another child. 673 F.3d at 1315-17. Here, on the other hand, Defendant Golden was purportedly aware of a bruise on Brooklyn's leg and that a person who lived in the same home as Brooklyn (but who did not have legal custody) was using drugs. (Doc. 24, ¶ 13).

What Defendant Golden knew cannot be called good news but it is also clearly not knowledge of "an extremely great risk of serious injury." *Vaughn*, 17 Fed.Appx. at 977. There is no indication that Golden had an intent to injure. *Waddell*, 329 F.3d at 1305. Indeed, the evidence shows that Golden alerted the DFCS officials in Coffee County so that they could look into the matter further. (Facts 11-17). And those persons did so. (*Id.*). She also expected those persons to conduct a background check on the persons living in the home with Brooklyn. (*Id.* 10). That this apparently did not occur does not constitute deliberate indifference by Golden who was a supervisor in a different county and did not oversee Coffee County. (*Id.* 3-9). If the *Braddy* defendants cannot be held liable, then Golden also cannot be held liable on these facts.

**B.  Plaintiff cannot prove a claim of supervisory liability against Defendant Golden**.

A supervisor may be found liable only when (1) she "personally participates" in the unconstitutional conduct; or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). A causal connection is shown when

9

(1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice and then failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the subordinate would act unlawfully and failed to stop the unlawful action. *Id.* "The deprivations that constitute widespread abuse must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted). A single incident establishes neither widespread abuse nor custom or policy. *See id.*; *Diaz v. Centurion of Fla., LLC Med. Contr.*, 2020 U.S. Dist. LEXIS 48811, *27 (S.D. Fla. March 18, 2020).

As argued above, Plaintiff cannot prove that Defendant Golden "personally participated" in any constitutional violation. She certainly cannot be held liable under any theory of *respondeat superior*. *Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999). And there is no evidence that would support any type of true *supervisory* liability. No widespread abuse can be shown. No custom or policy is demonstrated. There is no suggestion that Golden directed anyone to act illegally or that she knew someone would act unlawfully and failed to stop that person. There is simply no evidence anywhere that would permit a claim to go forward against Defendant Golden *as a supervisor*. This claim must be dismissed.

C.     **Any purported policy violation is immaterial.**

Defendant Golden anticipates that Plaintiff will argue that she violated certain DFCS policies. While she submits that this is not accurate, what matters is

that this is irrelevant. The sole issue concerning Golden is whether she violated the Constitution and "a violation concerning state law or policies does not amount to a constitutional violation for which Plaintiff can obtain relief under § 1983, as § 1983 is not concerned with a violation of state law/policies." *Toenniges v. Morales*, 2012 U.S. Dist. LEXIS 56175, 17, 2012 WL 1390184 (S.D. Ga. Feb. 28, 2012); *see also Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *Green v. Fye*, 2011 U.S. Dist. LEXIS 121899, 6-7, 2011 WL 5025158 (M.D. Ga. Oct. 21, 2011) ("violation of [a] policy does not present a constitutional claim").

**D.   Defendant Golden is entitled to qualified immunity**.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The immunity protects from suit all but the plainly incompetent or those who knowingly violate federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The public official must first show that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. The burden then shifts to the plaintiff to show that immunity is not appropriate. *Id.* To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at the time the alleged violation occurred. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time of the incident gave the defendant "fair and clear warning" that his conduct with respect to the plaintiff was unconstitutional. *Id.* at 746. Liability only attaches if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).

It cannot be argued that Defendant Golden was performing her job as a State employee when she engaged in actions complained of in the Fifth Amended Complaint; that is why she was acting under color of state law. Plaintiff cannot prove that Golden committed any actual constitutional violations. But even if such a violation could be found in hindsight, Plaintiff cannot show that it was clearly established at the time. *See Braddy*, 673 F.3d 1313; *Waddell*, 329 F.3d 1300. *Waddell*, in particular, makes clear that the applicable legal standard has never even been definitively established. 329 F.3d at 1306 n.5. And though that decision issued in 2003, nothing has meaningfully changed since that time. *See Braddy*, 673 F.3d at 1318 n.4 ("About the exact standard for the context of this case, we do not decide for certain"). And *Braddy* demonstrates that a substantive due process

violation requires a showing of much more individual involvement—and intentional involvement—in the causing of the injury than can be shown on these facts. Defendant Golden is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant Golden submits that all claims against her should be dismissed.

Respectfully submitted this 13th day of October, 2021.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| SUSAN E. TEASTER<br>Senior Assistant Attorney General | 701415 |
| */s/ Laura L. Lones*<br>LAURA L. LONES<br>Senior Assistant Attorney General | 456778 |

Attorneys for Defendant Golden

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (470) 355-2765
Facsimile:  (404) 651-5304
E-mail:  llones@law.ga.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2021, I electronically filed the foregoing **DEFENDANT GOLDEN'S SUPPLEMENTAL BRIEF CONCERNING HER PENDING DISPOSITIVE MOTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

*/s/ Laura L. Lones*
LAURA L. LONES
Georgia Bar No. 456778