**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | | |
|---|---|---|
| RACHEL ALDRIDGE, as Surviving | § | |
| Mother of BROOKLYN ALDRIDGE, | § | |
| Deceased, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 5:21-cv-00015-LGW-BWC |
| BEVERLY BEAUMIER, CLINTON | § | |
| WAYNE HARPER, and RAVEN GOLDEN, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**DEFENDANT BEVERLY BEAUMIER'S SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Beverly Beaumier, with this her Supplemental Brief in Support of her Motion for Summary Judgment, and showing this Honorable Court as follows:

This converted Motion for Summary Judgment began as a Motion to Dismiss. [Docs. 33, 65]. The defenses raised in the Motion to Dismiss, and now in the Motion for Summary Judgment, are both substantive and procedural. These issues have been briefed ad infinitum by both parties. To avoid needlessly repeating the same arguments, this Supplemental Brief will endeavor to only examine issues that have not been adequately addressed. The defenses and arguments set forth in the Motion to Dismiss, [Doc. 33]; Beaumier's Reply, [Doc. 47]; and the Response to the Surreply, [Doc. 51]; are incorporated.

The only claims alleged against Beaumier are for the violation of Brooklyn Aldridge's due process rights, and for the violation of Rachel Aldridge's due process right to the custody and control of her child.[1] For many reasons, all causes of action against Beaumier must be dismissed.

---

[1] Plaintiff's Complaints asserted other claims that were withdrawn. *See*, Doc. 47 p. 18.

1

The claims against Beaumier fail to meet the considerable burden of making a claim under the United States Constitution. The Supreme Court has cautioned repeatedly against courts using the Constitution as a font of state tort law. This is precisely what Plaintiff asks of the Court. The claims also fail to overcome the high bar set by the Supreme Court and Eleventh Circuit for qualified immunity. Plaintiff cannot meet that burden and the case she relies on, *Taylor v. Ledbetter*, does not stand for the proposition asserted. Perhaps the most glaring fact that supports dismissal are the facts that underlie a clear, unequivocal break in causation. A State Court in Coffee County, Georgia, held a hearing that Plaintiff Rachel Aldridge was present at and where she agreed to legitimate the father and to a joint custody arrangement. Plaintiff's case necessarily implies that Beaumier should have willfully violated this court order. Since any claimed harm from a due process violation took place <u>after</u> the hearing, this undisputed fact, standing alone, resolves the case. Simply put, Plaintiff's claims fail as a matter of law.

As to the procedural defenses, a second lawsuit is due to be dismissed when a party files multiple suits based on the same underlying nucleus of operative facts against the same parties or parties in privity. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). This case meets each element of claim-splitting and, as the Eleventh Circuit has made clear, the remedy is dismissal.

Plaintiff's claim is also barred under the doctrine of collateral estoppel. The prior lawsuit that Plaintiff now seeks to relitigate was dismissed both for a lack of jurisdiction under the Georgia Tort Claims Act and on substantive grounds. As Plaintiff is now appealing that dismissal, the Court may choose to stay this case pending the outcome of the appeal. Should Plaintiff succeed

at the appeal, then she can keep litigating that case and dismiss this suit as duplicative. If Plaintiff does not succeed, then this suit is barred under the doctrine of collateral estoppel.

Finally, Plaintiff's claims are barred under the statute of limitations. Firstly, Georgia law states that a party must serve a party as quickly as possible after the statute of limitations run. In the interim between service, Plaintiff must show diligence. In the nine months it took to serve Beaumier after the statute expired, Plaintiff cannot show the requisite diligence since there are significant gaps. Lastly, the acts alleged of Beaumier each took place more than two years before Plaintiff filed suit. In her briefs, Plaintiff has admitted that the statute is not tolled until an administrator has been named. A permanent administrator has not been named. That dooms this suit, at this moment.

## FACTS

On January 14, 2018, Brooklyn Aldridge's mother, Plaintiff Rachel Aldridge, was arrested and incarcerated. [Exhibit A, Coffee Cty. Cmplt. ¶ 17] 3. At the time of her arrest, Plaintiff had placed her three- year-old daughter, Brooklyn Aldridge, in the care and custody of the natural father, Ron Lott. [*Id*. ¶ 18]. Plaintiff was visited in jail by DFCS employee Beverly Beaumier. [*Id*. ¶ 21]. Plaintiff felt she would be released from jail the next day and asked that Brooklyn remain with Lott until her release. [*Id.* ¶ 18]. She was not released a day later. Instead, she was transferred to the Coffee County, Georgia jail on or about January 15th or 16th. [*Id*. ¶ 20]. Plaintiff was ultimately released on or around January 22nd. [*Id.* ¶ 25].

Based on Brooklyn being in the custody and care of Lott, DFCS drafted a "Georgia Safety Plan" outlining the dangers to Brooklyn caused by the "inadequate supervision" she would receive while Plaintiff was incarcerated. [Doc. 1-1 p.11[2]]. The Plan called for Lott to take over childcare responsibilities as the natural father. [*Id.*]. Plaintiff has stated that she was not made

---

[2] Doc 1-1 p. 11, was submitted as Exhibit B to Plaintiff's Complaint.

aware of the Safety Plan and that she did not agree with it. [*See* Cmplt. ¶ 10]. Plaintiff, however, later stated under oath that "[Brooklyn] was placed [in the father's home] because she was already there visiting him and I signed a Safety Plan or whatever saying that she could stay there…" [Aff. of Rachel Aldridge, Exhibit H, Doc. 1-2 p. 31 [3]].

On January 23, 2018, Lott filed a Petition for Temporary Custody and Legitimation in Pierce County. [Doc. 1-1 pp. 12-15[4]]. Plaintiff alleges that she was not provided notice of this hearing. [*Id.*]. The Petition was granted, and the court awarded temporary custody to Lott. [*Id.*]. Lott was then cohabitating with his girlfriend, Amanda Coleman, along with other minor children. [*Id.* ¶ 27].

When Brooklyn moved in with Lott, she was no longer in Pierce County, the location of the mother's residence. Lott lived in Coffee County. As a result, Beaumier was no longer the DFCS official in charge of the case, as her jurisdiction covered only Pierce County. When Plaintiff called DFCS about a bruise on Brooklyn's leg, it was Coffee County DFCS who logged the call and it was an agent of Coffee County, Ashlea Branch, who investigated. [See, Exhibit B, Coffee County Contact Log]. As a result, investigating the allegation was not within Beaumier's purview.

On March 1, 2018, the hearing on Lott's Legitimation was held before the Superior Court of Pierce County. [*Id.* ¶ 51]. <u>Both Lott and Plaintiff were present at the hearing</u>. [*Id.*]. Both parties could bring any facts or arguments to the court's attention. [*Id.*]. Plaintiff did not raise any issues to the court about drug screens or alleged abuse. Plaintiff made no objection to Lott's legitimation nor did she argue that he had abandoned his rights as a father. At that time, Brooklyn had been living with Lott for about six weeks, yet Plaintiff raised no issues with the safety of Lott's home. Finally, Plaintiff made no argument that custody with the father was inappropriate; she instead agreed to share custody. Based on Plaintiff's agreement with Lott's fitness as a parent, the court

---

[3] This transcript of a telephone voicemail is authenticated by Plaintiff in her Affidavit, Doc. 1-2 p. 3.
[4] Doc. 1-1 pp. 12-15, The Petition for Legitimation and Custody was attached to Plaintiff's Complaint.

awarded joint custody to Plaintiff and Lott, with alternating weeks of custody. [*Id.*]. Plaintiff was given a fair and impartial hearing before a state judge and she raised none of the arguments or issues with drugs or abuse that she now asks this Court to accept as grounds for a violation of the United States Constitution.

On November 21, 2019, Plaintiff sued the Beaumier's employer, the Georgia Division of Child and Family Services, in Coffee County, Georgia, Civil Action Number SUS2019000633. [Exhibit A]. In the prior lawsuit, Plaintiff brought claims against DFCS for the same issues arising under the same facts here. [*Id.*]. The prior Complaint asserted wrongdoing against Beaumier. [*Id.*]. DFCS defended the allegations against Beaumier in that suit. The suit was ultimately dismissed on two grounds. [Doc. 33-3]. First, the Complaint was dismissed under the Georgia Tort Claims Act, and secondly, it was dismissed on substantive grounds. [Doc. 33-3, Orders of Dismissal]. Plaintiff has since appealed the dismissal.

## ARGUMENT AND CITATION TO AUTHORITY

### A. 42 U.S.C. § 1983 [5]

    i.    <u>Plaintiff's Allegations Do Not Rise to the Level of a Constitutional Violation.</u>

Plaintiff has attempted to turn quintessential state torts and convert them into Constitutional violations. "[N]ot every wrong committed by a state actor rises to the level of a 'constitutional tort,' sufficient to trigger a substantive due process violation," *Lee v. Hutson,* 810 F.2d 1030, 1032 (11th Cir.1987), as "the Constitution does not protect against all encroachments by the state onto the interests of individuals." *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005). There are no facts present here to support a Constitutional violation.

---

[5] It has never been, and continues not to be, clear whether Plaintiff intends to bring a procedural due process claim or a substantive due process claim. Procedural due process was addressed adequately in the Motion to Dismiss, [Doc. 33-1 pp. 19-21].

Plaintiff has repeatedly alleged negligence by Beaumier. For the sake of argument, Defendant will concede that Plaintiff has even set forth some negligent acts. This is not enough. The Supreme Court has stated that a negligent act of an official causing unintended loss or injury to life, liberty, or property does not violate the United States Constitution. *Daniels v. Wiilliams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Plaintiff has not set and cannot set forth facts that show that Beaumier exhibited a deliberate indifference or that she intentionally injured Brooklyn. *See Daniels* at 330-31. A "lack of due care" or negligent acts by an official do not make a violation of the United States Constitution.

  ii. <u>Plaintiff cannot rely on *Taylor v. Ledbetter*</u>.

*Taylor v. Ledbetter* is distinguishable in all relevant respects. 818 F.2d 791 (11th Cir. 1987). This case does not create the clearly established statutory right for which Plaintiff contends. When juxtaposed with *Maddox v. Stephens*, the distinction becomes especially evident. 727 F.3d 1109 (11th Cir. 2013).

To quickly set forth the applicable standard: Qualified immunity offers "complete protection for governmental officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v.Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The doctrine protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," *Id.*, and prevents public officials from being intimidated— by the threat of lawsuits that jeopardize the official and her family's welfare personally— from doing their jobs. *Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996). It is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate— before they act or do not act— if their conduct will give rise to damage liability for them." *Id.* "Plaintiffs face a

high bar when attempting to establish a substantive due process violation as 'conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.'" *Maddox* at 1119 (citations omitted). "Even intentional wrongs seldom violate the Due Process Clause and 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.*

It is against this legal backdrop that Plaintiff must assert that qualified immunity does not apply. The case that Plaintiff relies on is *Ledbetter*. In *Ledbetter*, the Gwinnett County Department of Family and Children Services (DFCS), removed a child from her natural parents and her placed into a foster home. 818 F.2d at 792.

The issues and facts in *Ledbetter* are far removed than those here. In *Ledbetter*, the child was placed into a foster home; Brooklyn was placed with her natural father. *Id.* In *Ledbetter*, the state took the child and placed her with strangers with no relationship to the child; Brooklyn had been left at her father's home by the Plaintiff. *Id.* In *Ledbetter*, no hearing was provided. Here, both parents appeared for a hearing and each parent agreed to joint custody.

The issues addressed in *Ledbetter* looked at whether a child's placement into foster care, with complete strangers, was analogous to a prisoner in state custody. *Id.* at 796. Those are not the facts here, where:

- the child was left with the natural father, the same home that the mother felt was suitable to leave the child prior to her incarceration;

- the natural father petitioned for and was awarded temporary custody;

- the father was legitimated and granted joint custody at a hearing with the Plaintiff's approval;

the Plaintiff was given a hearing and was free to object to the legitimation and custody arrangement or to raise any issues of alleged abuse. **Nor** has Plaintiff been consistent about

whether she acquiesced to the Safety Plan, stating under oath that she agreed to it. [Doc. 1-2 p. 31, Pl's Aff., Ex. H].

Far removed from *Ledbetter*, the Plaintiff here agreed to award the father joint custody and never alerted the court to any instances of or the potential for abuse. These facts— where a natural father was awarded temporary custody and then joint custody, agreed to by the other custodial parent— could not be more distinguishable from *Ledbetter*, where the court held the child to be in a situation tantamount to incarceration.

Moreover, the *Ledbetter* Court held that the key to finding that a liberty interest protected by the due process clause had been violated, was based on the obligation the state has when placing a child in a custodial environment, where the child "may not have alternative living arrangements." *Id.* at 795. Here, when the harm was done to Brooklyn, it was <u>after</u> Beaumier and the state were no longer in control of her environment. It is undisputed that when the harm occurred, the Plaintiff mother had agreed to a joint custody arrangement in a court of law, that the natural father had been legitimated, and that the state was no longer in command of Brooklyn's placement. Again, these facts are undisputed and dispositive.

The contrast between these facts and *Ledbetter*, when viewed against the facts from *Maddox*[6], stand for the clear proposition that, (1) there is no clearly established law that could have put Beaumier on the clear unequivocal notice required to strip her of qualified immunity; (2) that none of Beaumier's acts rise to the level of a constitutional violation; (3) or that Beaumier's failure to disobey a court order after both natural parents agreed to a joint custody arrangement was arbitrary or conscience shocking.

Plaintiff's burden is exacting, strict, and demanding. The facts do not surpass what is required. The claims against Beaumier must be dismissed.

---

[6] The facts of *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013) are detailed in the Motion to Dismiss, Doc. 33-1 pp. 13-15.

### iii.    The Coffee County Order Breaks Causation

On March 1, 2018, a hearing was held before the Superior Court of Coffee County, Georgia. Present at the hearing were Plaintiff Rachel Aldridge and the natural father, Ron Lott. At this hearing, Plaintiff presented none of the allegations that she seeks to rely on in this suit. She never told the Judge that drug tests were needed, about drug use (either Lott's or her own), about alleged bruising, or that she had family members that should take custody of Brooklyn. What she did tell the court was that she agreed with Lott's legitimation and that she would share joint custody of Brooklyn with Lott.

Let's examine what would have been Beaumier's point of view after the hearing:

- Rachel Aldridge again had custody of Brooklyn;

- the legitimated father, Ron Lott, was given joint custody and Rachel Aldridge did not object to the arrangement;

- by that time, the child had spent about six weeks living in Lott's house and Rachel Aldridge was comfortable enough with that arrangement to permit Brooklyn to live with him on a joint basis;

- DFCS was no longer is control of the case (the case had been removed from Pierce County DFCS, for which Beaumier worked, for sometime at that point, after Brooklyn moved to Coffee County).

If Aldridge was consistent about the story she now submits to the Court, this was the hearing where she was able to raise all of the issues she now claims amount to a Constitutional violation. Plaintiff cannot sleep on her rights, agree that Lott is a suitable caretaker entitled to custody, permit Lott's legitimation, and then argue that Beaumier violated the United States Constitution in the face of all evidence to the contrary.

While this section is presented as one of causation, it supports the argument that Beaumier's actions do not rise to the level of a Constitutional violation. To submit a due process

claim, the Plaintiff must show that Beaumier acted with the intent to injure Brooklyn or with deliberate indifference. How can that possibly be true after Plaintiff's actions at the court hearing and after the judge's order? Plaintiff's actions at the hearing and the court's order is clear evidence that Beaumier's acts after March 1, 2018 were not so arbitrary or conscience shocking as to strip her of qualified immunity. Only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." *Maddox* at 1119. Were Beaumier's actions after Plaintiff appeared at the hearing and did not object to Lott having custody of Brooklyn "the most egregious official conduct"? No. The claims against Beaumier must be dismissed.

## B. CLAIM-SPLITTING

The Eleventh Circuit has adopted a rule against a plaintiff maintaining two separate actions involving the same subject matter, at the same time. In *Vanover v. NCO Financial Serv., Inc.*, the Eleventh Circuit confronted claim-splitting as an issue of first impression. 857 F.3d 833, 840 (11th Cir. 2017). "The claim-splitting doctrine applies where a second suit has been filed before the first suit has reached a final judgment." *Id.* The rules "require a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Id.* at 841. The filing of claims in multiple suits wastes "scarce judicial resources" and undermines the "efficient and comprehensive disposition of cases." *Id.*

The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it piecemeal, or present only a portion of the grounds upon which relief is sought and leave the rest to be presented in a second suit, if the first fails.'" *Id.*

In *Vanover*, the Eleventh Circuit adopted a two-factor test for claim-splitting. "[T]he court analyzes (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 841-42.

The test to determine whether two actions arise from the same transaction is particularly straight forward here. The Eleventh Circuit has adopted the transactional test to determine when

two actions are based on the same transaction. The "critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Id.* at 842 (emphasis in original). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* "Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts." *Id.*

The factual allegations in both the first Coffee County suit and this lawsuit are <u>identical</u>.[7] There is no colorable argument that the transactional test is not satisfied in this case. Thus, the second prong of the analysis is easily satisfied.

The parties in both the Coffee County suit and this suit are in privity as well. Claim-splitting is "analyzed as an aspect of res judicata or claim preclusion." *Vanover* at 841. Thus, the courts look to opinions expounding upon res judicata to determine the privity analysis applicable to claim-splitting. *Id.*

To determine whether two parties are in privity, a "specific relationship, sufficient to create privity" is required. *Baloco v. Drummond Co. Inc.*, 767 F.3d 1229, 1249 (11th Cir. 2014). Privity is a question of federal common law when jurisdiction is founded upon a federal question.[8] *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

In *Taylor*, the Court clarified federal common law on privity in the context of preclusion. *Id.* at 892-93. The Court held that privity, for the purpose of preclusion, can be found in these circumstances:

1) The nonparty agreed to be bound by the litigation of others;
2) a substantive legal relationship existed between the person to be bound and a party to the judgment;
3) the nonparty was adequately represented by someone who was a party to the earlier suit;

---

[7] This suit was originally filed in Pierce County, Georgia, and later removed to federal court.
[8] But where jurisdiction is based on diversity, the court looks to the law of the forum state.

4) the nonparty assumed control over the litigation in which the judgment was issued;
5) a party attempts to relitigate issues through a proxy; or
6) a statutory scheme forecloses successive litigation by nonlitigants. *Taylor* at 893-95.

For privity to exist, at least one of the six categories must apply. *Baloco* at 1250. Several categories apply to create privity between Beaumier and her employer, and between the Plaintiff and the Plaintiff as administrator of Brooklyn's estate.

Courts have routinely found principals and employers to be in privity with their agents and employees. "Most [ ] federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." *Citibank v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502-03 (11th Cir. 1990) (citing with approval a long line of precedent and treatises supporting the position that employers-employees and principals-agents are in privity). The Eleventh Circuit and district courts within this Circuit agree with *Citibank*.[9] Beaumier is in privity with her employer DFCS.

Under the third category there is an even stronger inference of privity. This category analyzes if, in the prior suit, Beaumier was adequately represented by DFCS and, if Aldridge adequately represented the estate. "Privity exists where the nonparty's interests were represented adequately by the party in the original suit." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560-61 (11th Cir. 1990). In *Hunt*, for example, a second suit was filed by a person who was a member of the NAACP and the Alabama state legislature but was not a party to the first suit brought by fourteen other members of the NAACP and the state legislature. *Id.* at 1561. Although the facts in *Hunt* were identical in both suits, the NAACP claimed that the different cause of action in the second suit

---

[9] *See e.g.*, *Sealey v. BB&T*, 693 Fed. Appx. 830, 835 (11th Cir. 2017); *Faison v. Ratliff*, No. 1:19-cv-00814-SCJ, 2021 WL 1305397, at *5 n.4 (N.D. Ga. March 3, 2021), *appeal docketed*, No. 21-11098 (11th Cir. Apr. 2, 2021) (finding contract police officers who were hired to provide security to be in privity with the business that hired them); *Bakov v. Consol. Travel Holdings Grp.*, No. 0:19-CV-61509-WPD/SNOW, 2020 WL 9934410, at *3 (S.D. Fla. Apr. 9, 2020) (holding a business and the individuals that controlled it or were employed by it to be in privity).

was enough to defeat privity and res judicata. *Id.* The court disagreed and found the plaintiff to be in privity since he was a member of the same organization as the plaintiffs to the prior suit. *Id.* In *Lary v. Ansari*, a plaintiff sued a company where he had once sued the individual who owned the company. 817 F.2d 1521, 1524 (11th Cir. 1987). The court found that the owner and company were in privity and that the suit was barred by res judicata. *Id.* In *Griswold v. Cty. of Hillsborough*, the court found that a sole shareholder and president of several companies was in privity with the companies because the defendant's interests were adequately represented by the companies in the prior suit. 598 F.3d 1289, 1292-93 (11th Cir. 2010).

The facts here exhibit an even closer relationship than those in *Hunt*, *Ansari*, or *Griswold*. In all three, a party was found to be in privity where they shared a close relationship with the party to the earlier suit. That relationship is even more extensive here. Beaumier was the focus of the initial suit and was the primary employee that DFCS sought to defend. And in the prior suit, Aldridge brought claims based on identical facts that she now seeks to assert as temporary administrator of the estate.

Post-*Vanover*, courts in this Circuit have consistently dismissed cases in which claim-splitting was employed. And in *Vanover*, dismissal was the only remedy the Eleventh Circuit held to be available where there has been claim-splitting. Here, the Plaintiff inconspicuously seeks to do precisely what the claim-splitting doctrine prevents: filing multiple suits for the same operative facts, hoping to spread her risk, to get a better or different result in a different forum, or re-litigating after an earlier suit fails. The Eleventh Circuit has repeatedly admonished that using claim-splitting for this purpose is not permitted in this Circuit. As clearly set forth in *Vanover*, the remedy is dismissal. *Vanover* at 843.

### C. COLLATERAL ESTOPPEL

Briefly, Plaintiff has argued that the Coffee County suit was not decided on the merits because it was disposed of on sovereign immunity grounds under the Georgia Tort Claims Act. That is

true in-part. Judgment was also granted on substantive grounds, where Plaintiff litigated these facts and brought other claims, such as a contract claim. This was dismissed on the merits.

"A plea of [collateral estoppel] is available when there has been a former adjudication of the same issues by the parties or their privies, though not upon the same cause of action." *Smith v. Wood*, 115 Ga.App. 265, 265 (1967). In other words, "[t]he doctrine of collateral estoppel 'precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Minnifield v. Wells Fargo Bank*, 331 Ga. App. 512, 515 (2015).

The Motion to Dismiss and related pleadings discuss the elements of collateral estoppel fully. Plaintiff's attempt to relitigate the identical substantive issues is barred under Georgia law.

### D.  OTHER DEFENSES AND ARGUMENTS

Defendant has set forth more complete versions of the arguments and defenses, as well as several more procedural defenses in prior filings which have since been converted into a Motion for Summary Judgment. Beaumier incorporates each of those arguments and defenses as though fully set forth in this brief and respectfully requests that this Court consider all arguments and defenses raised in those pleadings, now converted.

### CONCLUSION

For these reasons, Defendant Beaumier requests that this Honorable Court grant the Motion for Summary Judgment and dismiss all claims against her.


This 13th day of October, 2021.

APPELBAUM HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Beverly Beaumier*

14

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | | |
|---|---|---|
| RACHEL ALDRIDGE, as Surviving | § | |
| Mother of BROOKLYN ALDRIDGE, | § | |
| Deceased, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 5:21-cv-00015-LGW-BWC |
| BEVERLY BEAUMIER, CLINTON | § | |
| WAYNE HARPER, and RAVEN GOLDEN, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all counsel of record with a true and accurate copy of **DEFENDANT BEVERLY BEAUMIER'S SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**, by filing the document with the Court's CM/ECF electronic filing system which will automatically serve all counsel of record at their electronic mail address on file with the Court.

This 13th day of October, 2021.

APPELBAUM HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Beverly Beaumier*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

15